207 A.2d 300.
JOHN F. CIOCI *vs.* CONSTANTINE C. SANTOS *et al.*

FEBRUARY 23, 1965.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Joslin, JJ.

ROBERTS, J. This is an action of trespass for false imprisonment brought against three members of the police department of the town of Cumberland. The action arises out of the arrest of the plaintiff by the defendants without warrant on January 14, 1963. The matter was tried to a justice of the superior court sitting with a jury, who, after denying the plaintiff's motion for a directed verdict of guilty, submitted the case to the jury. A verdict of not guilty was returned. The plaintiff in this court is prosecuting a bill of exceptions to certain evidentiary rulings and the denial of his motion for a directed verdict of guilty.

The circumstances surrounding the arrest of plaintiff are not in substantial dispute. It appears that a clubhouse occupied by a veterans' organization located in the town of Cumberland was broken into on the night of December 23, 1962 and that some properties were removed therefrom, including liquor and money. The police thereafter, in the course of investigating this break, interrogated a number of juveniles. On January 14, 1963 two of these juveniles admitted to police interrogators that they had participated in this break along with plaintiff in the instant action. Upon being so informed, defendant Santos, who holds the rank of captain in the police department, ordered the defendant patrolmen to take plaintiff into custody. There is testimony that defendants knew plaintiff as one who had been in trouble with the law on prior occasions.

Thereafter these patrolmen observed plaintiff walking along a public highway in the company of another boy and took him into custody. Upon being informed by these patrolmen that he was under arrest, he voluntarily entered the police car and was taken to the police station in Cumberland where, at approximately 3:42 in the afternoon, he was locked in a cell. Shortly before 5 o'clock plaintiff was discovered hanging in the cell. He was cut down immediately, given appropriate aid, and was taken to Memorial Hospital in Pawtucket in an ambulance operated by the Ashton rescue squad.

Shortly thereafter on that same evening the authorities at Memorial Hospital informed Captain Santos that plaintiff should be removed to the Chapin Hospital in Providence. This was done by the Cumberland police, and he remained in that institution for a period of about ten days. On January 23, 1963 the hospital authorities informed the Cumberland police that plaintiff was ready for discharge. and he was taken from that institution to the district court in Central Falls for arraignment. It appears that thereafter plaintiff was indicted in connection with the break at the

veterans' clubhouse in Cumberland and that, after a plea of nolo contendere, the imposition of sentence was deferred on that indictment, and plaintiff was released pursuant to the usual terms related to the deferment of sentence.

The instant action is for false imprisonment, the gist of which is the detention of another without his consent. "The essential element of this tortious action is the restraint of another person without legal justification or without any color of legal authority." *Mailey* v. *Estate of DePasquale,* 94 R. I. 31, 34, 177 A.2d 376, 379. The defendants have pleaded justification, contending that they are police officers of the town of Cumberland "and had reason to believe that the plaintiff had committed a felony and therefore had a right to arrest and imprison the plaintiff." It is to be noted that the plea is based upon the common-law concept of a lawful arrest and makes no reference to any statutory authority relating to the power of a police officer to arrest. In short, the primary issue raised by the pleadings was whether the arrest of plaintiff, being supported by probable cause, was a lawful arrest that made the detention of the plaintiff lawful.

The plaintiff contends that the instant arrest was unlawful on the constitutional ground that the concept of lawful arrest within the purview of the constitution is the common-law rule that arrest without a warrant, unless based on probable cause, is unlawful. It is true that the arrest of plaintiff in the instant case, unless made on the basis of probable cause, was unlawful and the detention subsequent thereto would be actionable as false imprisonment. In *Henry* v. *United States,* 361 U. S. 98, the court said at page 102: "Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed. * * * It is important, we think, that this requirement be strictly enforced, for the standard set by the Constitution protects both the officer and the citizen. If the officer acts with

probable cause, he is protected even though it turns out that the citizen is innocent." The United States Supreme Court has also noted that "The quantum of information which constitutes probable cause—evidence which would 'warrant a man of reasonable caution in the belief' that a felony has been committed * * * must be measured by the facts of the particular case." *Wong Sun* v. *United States,* 371 U. S. 471, 479.

The specific contention of plaintiff is urging lack of probable cause for the instant arrest goes to the conceded fact that the information upon which defendants rely as establishing probable cause came to them by way of the statements of two juveniles who, admitting participation in the break, stated that plaintiff had participated therein with them. The plaintiff concedes that information sufficient to constitute probable cause may be acquired through an informer but argues that for such information to constitute probable cause, the informer must be reliable. He argues from this that the information on which probable cause is posited in this case came from two juveniles who were accomplices in the commission of the offense and that the concept of reliability is exclusive of juveniles and accomplices.

We know of no rule of general application for determining when information furnished an officer by an informer is sufficiently reliable to constitute probable cause for arrest without warrant. Such sufficiency must be determined, if at all, on the relevant facts of the particular case. In *Wong Sun* v. *United States, supra,* the court, citing *Draper* v. *United States,* 358 U. S. 307, said: "We have held that identification of the suspect by a reliable informant may constitute probable cause for arrest where the information given is sufficiently accurate to lead the officers directly to the suspect." This statement, in our opinion, is significant of the court's view that the requirement of reliability applies to the information provided as well as to the in-

formant. Ordinarily information so furnished will not meet the test of reliability if it be so general and broad as to include within its scope a class or group of individuals, for this would merely serve to justify numerous or even mass arrests by the officers. In this sense reliability posits the specification of a particular suspect or suspects and thus limits the officers' justification for the arrest of an individual. See *Escobedo* v. *State of Illinois*, 378 U. S. 478, 84 S. Ct. 1758.

The requirement of reliability applies also to the informer. In *Draper* v. *United States, supra*, the information that was held to justify the arrest without warrant came from a paid informer who on prior occasions had provided the officer with dependable information concerning criminal activities in dealing with narcotics. It does not follow, however, in our opinion that information, to constitute probable cause, must in every case be provided by an informer who had on previous occasions furnished dependable information. To so construe the rule would, in effect, be to work its nullification.

Referring again to *Draper* v. *United States, supra*, the court at page 313 said that the establishment of probable cause frequently turns on the officer's possession of "reasonably trustworthy information," which is persuasive that reliability flows from the nature of the information furnished and from the informant's reasonable opportunity to acquire the knowledge he purports to possess. The test, in short, is, in our opinion: Does the information come from an informer who in the particular circumstances reasonably could be deemed to have acquired knowledge concerning the criminal matters to which it relates and participation therein by the suspect? It is our conclusion that where the informer reasonably could be deemed to have such knowledge and it relates to a particular suspect, an officer may act thereon to arrest without warrant.

Because we take this view, we find no merit in plain-

314

tiff's broad contention that neither juvenile offenders nor accomplices can be deemed to be reliable informers within the rule laid down in *Draper* v. *United States.* As we have already said, the reliability of information in these cases depends upon its relationship to the particular suspect as well as to the informer's opportunity to have acquired such information concerning the criminal act and the suspect's participation therein. In the instant case the juveniles clearly knew the crime was under investigation, having admitted their own participation therein. They specifically identified plaintiff as having also participated in the break, and therefore it is our opinion that the information they gave defendants here was dependable information provided by reliable informants and constituted probable cause for an arrest by them on January 14 without warrant.

The plaintiff has argued also that even if the arrest of January 14 be held lawful, his detention became unlawful by reason of its continuance in excess of the period of two hours for which provision is made in G. L. 1956, §12-7-1. This statute confers upon peace officers authority to detain for investigation a person who is reasonably suspected of some past, present, or future criminal act but authorizes a total period of detention pursuant to its terms not in excess of two hours. The statute is without pertinence in this case. The defendants pleaded in justification a common-law arrest predicated upon probable cause therefor, which puts in issue the validity of an arrest at common law. Clearly, the question of the legality of the detention under §12-7-1 in such circumstances is not in issue.

It is further argued by plaintiff that his detention, if subsequent to a lawful arrest on January 14, became unlawful when he was taken by defendants into the cities of Pawtucket and Providence for hospitalization after his attempted suicide at the police station. In pressing this argument, he relies on the case of *Page* v. *Staples,* 13 R. I. 306, wherein this court held that a sheriff of Providence

county who took a prisoner into the county of Kent was without authority to detain him in the latter county. The opinion does not disclose that the defendant sheriff took the plaintiff prisoner into another county for any reason apart from his own convenience.

There is, in our opinion, an element in the instant case that removes it from the rule laid down in *Page* v. *Staples, supra.* Here the officers took plaintiff from their precinct, the town of Cumberland, into the cities of Pawtucket and Providence for the purpose of procuring for him appropriate hospitalization and medical attention to the end that his life might be preserved from termination at his own hand. Were we to concede that a police officer holding authority from a municipality may not lawfully detain a prisoner in another municipality, it should not follow that such detention will subject the officer to liability for false imprisonment for reasons of public policy.

In *Yekhtikian* v. *Blessing,* 90 R. I. 287, 291, this court said, regarding an argument that an officer should be liable for false imprisonment when an arrest was made under a statute subsequently held unconstitutional: "We think this position is untenable. It does more than impose an unfair burden on a conscientious police officer—it does violence to sound public policy. One can readily imagine the uneasiness of a people dependent for the protection of their safety, lives and property on a police department, the members of which are reluctant to enforce an act of the legislature that has not as yet been judicially approved." It is our opinion that the dictates of public policy require also that police officers who have a citizen in their lawful custody be not deterred from acting to protect the well-being of such person, particularly in circumstances arising out of an emergency such as existed in the instant case.

The exceptions of the plaintiff are overruled, and the case is remitted to the superior court for entry of judgment on the verdict.

*Pontarelli & Berberian, Aram K. Berberian,* for plaintiff.

*DiSpirito and Lind, Frank O. Lind, Jr.,* for defendants.