**STATE**

v.

**John F. DiCICCO.**

No. 97–118—C.A.

Supreme Court of Rhode Island.

Jan. 27, 1998.

Annie Goldberg, Aaron L. Weisman, Providence, John J. Mahon, for Plaintiff.

John J. Bevilacqua, Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER and FLANDERS, JJ.

## OPINION

LEDERBERG, Justice.

This case came before the Supreme Court on the certification of two questions of law by a justice of the Superior Court pursuant to G.L.1956 § 9–24–27 and Rule 72 of the Superior Court Rules of Civil Procedure. At issue are G.L.1956 § 31–27–2.2, "Driving under the influence of liquor or drugs, resulting in death," and § 31–27–2, "Driving under influence of liquor or drugs." The questions ask us to determine:

"1. In a criminal prosecution for driving under the influence of alcohol, death resulting in R.I.G.L. § 31–27–2.2, as amended or driving under the influence, R.I.G.L. § 31–27–2, is a blood alcohol level of 0.10 percent or greater, an essential element of the offense or can the state attempt to establish the element of 'under the influence of alcohol' by proof of a blood alcohol level of less than 0.10 percent?"

"2. If the state is entitled to prove that an operator with a blood alcohol level of less than 0.10 percent was nonetheless under the influence, what is the standard to establish this element of 'under the influence of alcohol'?"

### Facts and Procedural History

The defendant, John F. DiCicco, was arraigned on a three-count indictment on April 26, 1995, and charged with driving while under the influence, death resulting; driving so as to endanger, death resulting; and possession of marijuana. The defendant pleaded not guilty to each count and was released on bail. He subsequently filed a motion to sever the first count of the indictment, that which charged him with driving under the influence, death resulting, from the two remaining counts, and a justice of the Superior Court granted that motion on February 6, 1997. The two questions of law before us were certified on February 20, 1997. In conjunction with the certification order, the parties agreed to a statement of facts from which we derived the following recitation.

At approximately 9:15 p.m. on December 17, 1994, defendant was operating his employer's dog-kennel truck on the access road inside Lincoln Greyhound Park in Lincoln, Rhode Island. The road conditions were poor because of "pouring rain," and the overhead street light at the site of the accident allegedly was out. The defendant was traveling straight in his lane with his headlights and windshield wipers turned on. He was driving his truck at approximately forty miles per hour even though the posted speed limit was only twenty-five miles per hour. The defendant's vehicle struck a pedestrian, Maria Carlino, who died from the injuries she sustained in the accident.

Patrolman Casey Free (Free) of the Lincoln police, who had two years of experience in law enforcement, administered three field-sobriety tests to defendant at the scene of the accident. Specifically, Free asked defendant to perform the "horizontal gaze nystagmus," the "walk and turn," and the "finger to nose" tests. The testing took place on the roadway in the rain, and defendant was not asked his physical condition or whether there was any reason he could not perform the requested tasks. The defendant wears regular prescription eyeglasses and was wearing them at the time of the accident. At the end of these tests, Free thought defendant had performed poorly. These results were recorded in Free's police report, along with Free's observation that defendant had "glossy eyes" and that there was a strong odor of alcohol on his breath. Another police officer, Patrolman Philip Gould, also detected an odor of alcohol when he patted defendant down.

Blood samples were taken without defendant's consent pursuant to a search warrant. The results of tests on two blood samples, which had been taken at 1 a.m. and 1:30 a.m., indicated that defendant's blood alcohol content (BAC) was ".00% BAC or Negative." In his statement to the Lincoln police, defendant stated that his workday had begun at 5:30 a.m. on December 17, 1994, that he had had a "grinder" and a soda for lunch, and that he had consumed approximately four twelve-ounce bottles of beer around 4:30 p.m. The defendant weighed 210 pounds at the time of the accident.

The parties further agreed that using an average alcohol absorption rate of .015 per-

cent per hour (calculated for a 160–pound person) and considering the evidence in the light most favorable to the state, the state can prove only that defendant's BAC was .05 percent or less at the time of the accident. With this background, we proceed to address the certified questions.

### Question 1

"In a criminal prosecution for driving under the influence of alcohol, death resulting in R.I.G.L. § 31–27–2.2, as amended or driving under the influence, R.I.G.L. § 31–27–2, is a blood alcohol level of 0.10 percent or greater, an essential element of the offense or can the state attempt to establish the element of 'under the influence of alcohol' by proof of a blood alcohol level of less than 0.10 percent?"

■ The first certified question asks whether a BAC of at least 0.10 percent is an essential element of the crime of driving under the influence of alcohol in § 31–27–2, or of the crime of driving under the influence of alcohol, death resulting, in § 31–27–2.2. The relevant sections of these statutes read as follows:

"**31–27–2. Driving under influence of liquor or drugs.**—(a) *Whoever operates or otherwise drives any vehicle in the state while under the influence of any intoxicating liquor, drugs, toluene, or any controlled substance as defined in chapter 28 of title 21, or any combination thereof,* shall be guilty of a misdemeanor and shall be punished as provided in subsection (d) of this section.

(b)(1) Any person charged under subsection (a) of this section whose blood alcohol concentration is one-tenth of one percent (.1%) or more by weight as shown by a chemical analysis of a blood, breath, or urine sample shall be guilty of violating subsection (a) of this section. *This provision shall not preclude a conviction based on other admissible evidence. Proof of*

*guilt under this section may also be based on evidence that the person charged was under the influence of intoxicating liquor, drugs, toluene, or any controlled substance defined in chapter 28 of title 21, or any combination thereof, to a degree which rendered such person incapable of safely operating a vehicle.* The fact that any person charged with violating this section is or has been legally entitled to use alcohol or a drug shall not constitute a defense against any charge of violating this section." (Emphases added.)

"**31–27–2.2. Driving under the influence of liquor or drugs, resulting in death.**—(a) When the death of any person other than the operator ensues as a proximate result of an injury received by the operation of any vehicle, *the operator of which is under the influence of any intoxicating liquor, toluene, or any controlled substance as defined in chapter 28 of title 21 or any combination thereof, the person so operating the vehicle shall be guilty of* 'driving under the influence of liquor or drugs, resulting in death.'" (Emphasis added.)

■ "It is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *Accent Store Design, Inc. v. Marathon House, Inc.,* 674 A.2d 1223, 1226 (R.I.1996). Moreover, when we examine an unambiguous statute, "there is no room for statutory construction and we must apply the statute as written." *In re Denisewich,* 643 A.2d 1194, 1197 (R.I.1994).[1]

■ The wrong proscribed by § 31–27–2 is identical to that in § 31–27–2.2, namely, operating a motor vehicle while "under the influence of any intoxicating liquor, toluene, or any controlled substance as defined in chapter 28 of title 21, or any combination

---

1. Of course, it is equally well established that, when confronted with statutory provisions that are unclear or ambiguous, this Court, as final arbiter of questions of statutory construction, will examine statutes in their entirety, and will "glean the intent and purpose of the Legislature 'from a consideration of the entire statute, keep-

ing in mind [the] nature, object, language and arrangement' of the provisions to be construed." *In re Advisory to the Governor,* 668 A.2d 1246, 1248 (R.I.1996) (quoting *Algiere v. Fox,* 122 R.I. 55, 58, 404 A.2d 72, 74 (1979)). This analysis, however, is unnecessary in the face of unambiguous statutory language.

thereof." Section 31–27–2(b)(1) offers specificity in respect to the methods of proof and the operational definition of these key words, and provides unequivocally that the determination of BAC through chemical tests "shall not preclude a conviction based on other admissible evidence." In *State v. Lusi,* 625 A.2d 1350, 1357 (R.I.1993), we pointed out that § 31–27–2 expressly allows the state "to supplement [BAC test] results with other evidence." Even though § 31–27–2.2 contains no such language, the well-known canon of statutory construction *in pari materia* dictates that similar statutes should be interpreted similarly. *See, e.g., John Hancock Mutual Life Insurance Co. v. Harris Trust & Savings Bank,* 510 U.S. 86, 101–06, 114 S.Ct. 517, 527–29, 126 L.Ed.2d 524, 540–44 (1993). This argument is especially compelling because §§ 31–27–2 and 31–27–2.2 use exactly the same language in proscribing driving "while under the influence of any intoxicating liquor, toluene, or any controlled substance as defined in chapter 28 of title 21, or any combination thereof." Moreover, most compelling in formulating our response is the fact that prior decisions of this Court clearly hold that a conviction under § 31–27–2.2 may rest on evidence other than a BAC level of 0.10 percent or more.

In *State v. Benoit,* 650 A.2d 1230, 1233 (R.I.1994), this Court observed that

> "[i]n order to sustain a conviction under § 31–27–2.2(a), the state must produce sufficient evidence for a jury to conclude that the defendant's manner of operating his or her motor vehicle was a proximate cause of the victim's death and that the collision occurred *while the defendant was legally intoxicated.*" (Emphasis added.)

Further, in *State v. Sahady,* 694 A.2d 707, 709 (R.I.1997), we held that the terms "intoxicated" and "under the influence," as used in G.L.1956 § 11–47–52,[2] were not unconstitutionally vague. After observing that "the term 'intoxication' has long been defined by this court in the criminal context," 694 A.2d at 709, we noted,

" 'Intoxication comprehends a situation where, by reason of drinking intoxicants an individual does not have the normal use of his physical or mental faculties, thus rendering him incapable of acting in a manner in which an ordinarily prudent and cautious man, in full possession of his faculties, using reasonable care, would act under like conditions.' " *Id.* (quoting *State v. Amaral,* 109 R.I. 379, 385–86, 285 A.2d 783, 787 (1972)).

In *Sahady,* evidence was offered showing that, at the time of the defendant's arrest, "his speech was slurred, his eyes were bloodshot and watery, * * * he emitted a strong odor of alcohol * * * [and he] failed at least four field sobriety tests." *Id.* We held that this evidence sufficiently established that the defendant's "particular level of intoxication" was proscribed by § 11–47–52. *Id.* In addition, our decision in *Benoit* construed the terms "under the influence of intoxicating liquor," as used in §§ 31–27–2 and 31–27–2.2, and "legally intoxicated" as essentially synonymous. Moreover, our holding in *Sahady* reinforces our conclusion that evidence other than that pertaining to an individual's BAC may serve to sustain a conviction for a crime for which a defendant's being "under the influence" is an element.

▪ The defendant conceded at oral argument that if no chemical test had been administered, the state would clearly be able, under the language of §§ 31–27–2 and 31–27–2.2, to proceed against a defendant on the basis of other admissible evidence, including the observations of the law enforcement personnel who responded to the call to the scene. The defendant went on to argue, however, that the state cannot go forward on the basis of other admissible evidence if a chemical test was administered and showed a BAC of less than 0.10 percent. This assertion contravenes any reasonable reading of the statutes in question. The state, as in all criminal cases, may present to a jury, or a judge sitting as factfinder, any admissible evidence—here, of alcohol or any controlled

---

2. General Laws 1956 § 11–47–52 provides, **"Carrying of weapon while under the influence of liquor or drugs.**—It is unlawful to carry or transport any firearm in this state when intoxicated or under the influence of intoxicating liquor or narcotic drugs."

substance—that it believes most strongly makes its case.[3]

Over ten years ago, this Court observed that "[s]cientific evidence and sad experience demonstrate that any driver with 0.10 percent blood alcohol is a threat to the safety of the public and to himself." *State v. Lussier*, 511 A.2d 958, 960 (R.I.1986) (quoting *Burg v. Municipal Court for the Santa Clara Judicial District of Santa Clara County*, 35 Cal.3d 257, 198 Cal.Rptr. 145, 150, 673 P.2d 732, 738 (1983) *cert. denied*, 466 U.S. 967, 104 S.Ct. 2337, 80 L.Ed.2d 812 (1984)). It does not follow that only drivers with 0.10 percent or greater BAC's are threats to the safety of the public, nor that they are the only drivers who travel Rhode Island's roads in violation of § 31–27–2.

"A holding to the contrary would negate the goal of legislation against drunken driving, which is to reduce the carnage occurring on our highways attributable to persons who imbibe alcohol and then drive. To accomplish this objective, the state seeks to remove from the highway drivers who by drinking become a menace to themselves and to the public." *State v. Bruskie*, 536 A.2d 522, 524 (R.I.1988).

In interpreting a statute similar in important respects to our own,[4] the Court of Appeals of Texas explained that

"while there may be a 'magic moment' under the .10% definition when behavior becomes criminal—that is, the *per se* section can be invoked only when a .10% or greater level is reached, the converse is not true: an alcohol concentration *below* .10% does not automatically mean a defendant's conduct is not criminal because un-

der the other definition of intoxication, 'impairment' is the concern. There is no presumption of sobriety that would exonerate a defendant whose alcohol concentration was less than .10%. * * * [M]aintaining an alcohol concentration under .10% does not mean that a defendant has avoided criminal conduct." *Dahl v. State*, 707 S.W.2d 694, 701–02 (Tex.Ct.App.1986).

Our Legislature expressly has declared that proof of a person's illegally "driving under the influence" "to a degree which rendered such person incapable of safely operating a vehicle" may be based on "admissible evidence" other than BAC. Section 31–27–2. The statutes at issue clearly permit evidence of "drugs, toluene, any controlled substance as defined in chapter 28 of title 21." And it is significant that our past cases have established that such other evidence may include, for example, "entries in defendant's medical record that defendant had 'alcohol on [his] breath' and was 'intoxicated' when he was admitted to the hospital." *State v. Collins*, 679 A.2d 862, 865–66 (R.I.1996). In a similar vein, we held in *Bruskie* that

"police officers can testify and offer an opinion concerning intoxication provided they satisfy the two-part test set forth in [*State v.*] *Fogarty*, [433 A.2d 972 (R.I. 1981)] requiring that (1) the witness has had an opportunity to observe the person and, (2) the witness can give concrete details on which the inference or description is founded. 433 A.2d at 976." *Bruskie*, 536 A.2d at 524.

Accordingly, we answer the first certified question in the negative. A BAC of 0.10 percent[5] or greater is *not* an essential ele-

---

**3.** Of course, the state also is obliged to provide a defendant with any exculpatory, material evidence that a defendant might use in his or her own defense in keeping with the mandates of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *In re Ouimette*, 115 R.I. 169, 342 A.2d 250 (1975), and their respective progeny. *See also* Super. R.Crim. P. 16.

**4.** At the time that *Dahl v. State*, 707 S.W.2d 694 (Tex.Ct.App.1986) was decided, article 6701*l*–1 subsections (a) and (b) of Tex. Civ.Code Ann. (West 1977), read in pertinent part: "(a) In this article: * * * (2) 'Intoxicated' means: (A) not having the normal use of mental or physical faculties by reason of the introduction of alcohol,

a controlled substance, a drug, or a combination of two or more of those substances into the body; or (B) having an alcohol concentration of 0.10 or more. * * * (b) A person commits an offense if the person is intoxicated while driving or operating a motor vehicle in a public place." Texas has subsequently recodified its laws against drunk driving at § 49 of the Texas Penal Code.

**5.** Or such other reduced level as the Rhode Island Legislature may proscribe in the future. See, for example, 1997 R.I. Senate Bill No. 28, carried over to the 1998 session, which would "reduce the blood alcohol concentration from one tenth of one percent to eight one-hundredths of one percent for the purpose of determining

ment of the offenses proscribed by §§ 31–27–2 and 31–27–2.2, that is, of driving under the influence of liquor and driving under the influence of liquor, death resulting. Blood alcohol content is but one weapon with which the state can stem the blight of drunk drivers;[6] it is not a shackle. Therefore, a BAC of 0.10 percent or more is not required in order to prove that a motor-vehicle operator was "under the influence" of intoxicating liquor.

### Question 2

"If the state is entitled to prove that an operator with a blood alcohol level of less than 0.10 percent was nonetheless under the influence, what is the standard to establish this element of 'under the influence of alcohol'?"

It is axiomatic that under Rhode Island law the standard necessary for a criminal conviction is proof beyond a reasonable doubt. *Lusi*, 625 A.2d at 1356 (citing *State v. Desrosiers*, 559 A.2d 641, 645 (R.I.1989)). In *Lusi*, we held that a defendant who successfully rebuts the inference that his or her BAC was as great at the time of driving as it was at the time of testing, when his BAC at testing was 0.10 percent, is entitled to a judgment of acquittal in respect to the charge of violating § 31–27–2 if the state "otherwise fail[s] to prove beyond a reasonable doubt that defendant was driving under the influence." 625 A.2d at 1357. Moreover, we pointed out that in criminal cases in general, this Court "has permitted the state to rely on evidence other than direct evidence as long as the totality of that evidence constitutes proof of guilt beyond a reasonable doubt." *Id.*

Our holding and pronouncement in *Lusi* comported with our precedent that

"[i]n this jurisdiction the state may rest its case entirely upon circumstantial evidence without disproving any speculation or in-

ferences of innocence. * * * The circumstantial evidence, however, must be sufficient proof of guilt beyond a reasonable doubt and will be found insufficient if it merely raises a suspicion or inference of guilt. * * * Through a process of logical deduction, the state may prove guilt from an established circumstantial fact through a series of inferences." *State v. Simpson*, 611 A.2d 1390, 1394 (R.I.1992) (quoting *State v. Dame*, 560 A.2d 330, 334 (R.I. 1989)).

*See, e.g., State v. Mattatall*, 603 A.2d 1098, 1106–07 (R.I.) *cert. denied*, 506 U.S. 838, 113 S.Ct. 117, 121 L.Ed.2d 74 (1992) ("When determining whether the evidence is sufficient to sustain a conviction, no distinction is to be drawn between circumstantial and direct evidence. The only standard to guide the trial justice, and this court on review, is whether the evidence constitutes proof of guilt beyond a reasonable doubt") (citing *State v. Caruolo*, 524 A.2d 575, 581 (R.I. 1987)); *see also* 7A Am.Jur.2d, *Automobiles and Highway Traffic* § 375 (1980) ("Although, as in other criminal cases, the elements of the offense must be established beyond a reasonable doubt in a prosecution for driving a motor vehicle while intoxicated, or * * * while under the influence of intoxicating liquor or drugs, there are no extraordinary or unusual limitations on the use of circumstantial evidence in such cases. Evidence of all facts and circumstances directly tending to establish or negative the fact that the defendant was intoxicated or under the influence of intoxicating liquor is admissible").

Accordingly, today we make explicit what was implicit in *Lusi* and hold that in the absence of a BAC test having been administered *or* if a test results in a BAC of less than 0.10 percent, a conviction under §§ 31–27–2 or 31–27–2.2 shall be sustained if the totality of other competent evidence estab-

---

whether an individual has been operating an automobile under the influence of alcohol." We also note that Congress has considered legislation that would make the receipt of federal highway funds contingent upon each state's enactment of legislation adopting the 0.08 percent rule. *See, e.g.,* S. 1173, 105th Cong., 1st Sess. (1997).

6. *See, e.g.,* Jody McPhillips, "Alcohol is everywhere," Providence Journal–Bulletin, November 20, 1997, at A–1 (reporting Governor's Office on Highway Safety survey finding that "[n]early 80 percent of Rhode Island high school students think binge drinking is a serious problem in high school, while nearly 90 percent say their fellow students not only drink—they drink and drive").

lishes beyond a reasonable doubt that a person was under the influence of "intoxicating liquor, drugs, toluene, or any controlled substance as defined in chapter 28 of title 21, to a degree which rendered such person incapable of safely operating a vehicle."

The certified questions are answered in accordance with this opinion. The papers in this case may be remanded to the Superior Court for further proceedings.

GOLDBERG, J., did not participate.