OPINION
 

 PER CURIAM.
 

 This case came before the Court for oral argument on December 9, 2002, pursuant to an order that had directed both parties to appear in order to show cause why the issues raised in this appeal should not summarily be decided. After considering the arguments of counsel and the memo-randa filed by the parties, we are of the opinion that cause has not been shown and shall proceed to decide the appeal at this time.
 

 Facts and Procedural History
 

 After a nonjury trial in the Superior Court, defendant, Vincent A. Ceraso (defendant), was convicted of driving while intoxicated in violation of G.L.1956 § 31-27-2. Judgment was entered and he was sentenced to serve the minimum mandatory sentence required by law.
 
 [1]
 
 On appeal, he asserts that the trial justice erred in denying his motion to suppress for lack of jurisdiction on the part of the Newport police to arrest him in neighboring Jamestown.
 

 The following facts essentially are undisputed. In the early hours of February 14, 2000, Newport police officer, Sergeant Richard Field (Sgt. Field) obeyed a direction by his superior officer, Lieutenant Turano, to respond to a roll-over accident that had just occurred near the toll booths on the Jamestown side of the Newport Bridge. Sergeant Field promptly responded and arrived at the scene simultaneously with the State Police. Upon arrival, Sgt. Field immediately observed a scene of absolute chaos. There were police and rescue vehicle units present from both Jamestown and Newport, all of which had their emergency lights activated. The accident had completely blocked off the eastbound traffic from Jamestown and, because the toll booth operators had not stopped the flow of traffic onto the bridge from Jamestown, the eastbound lanes had backed up and were at a complete standstill between the toll booths and the accident scene. Even the Jamestown police cruisers were blocked in by the traffic and were prevented from gaining vehicular access to the accident scene.
 

 Sergeant Field approached State Police Trooper Paul Conlon who informed him that the state police would manage the accident scene itself. Sergeant Field then met with Sergeant Donovan (Sgt. Donovan) of the Jamestown police and offered his assistance. They discussed the gravity of the situation and acknowledged that because the circumstances involved a rollover, gasoline would leak onto the bridge thereby creating a very hazardous situa
 
 *832
 
 tion. To avoid a potential catastrophe, it was crucial to evacuate all the vehicles trapped between the toll booths and the accident scene as quickly as possible. They decided that the most efficient way of easing the gridlock and securing the safety of all those present would be to establish a roadblock further up the bridge on the westbound side, and then to direct eastbound traffic to bypass the accident using the so'on-to-be-traffic-free westbound side of the bridge. The only police cruiser available to implement this evacuation plan belonged to Sgt. Field, so he told Sgt. Donovan that he would set up the necessary roadblock.
 

 At approximately 2 a.m., Sgt. Field set up the planned roadblock by positioning his police cruiser at a right angle to the guard rail on the westbound side of the bridge-at a location above the scene of the accident. His vehicle blocked most of the inside lane and partially blocked the outside lane. In addition to the vehicle’s flashing overhead lights, Sgt. Field also used a flashlight to warn all westbound approaching vehicles to stop. Sergeant Field maintained' constant radio contact with Lieutenant Kliever (Lt. Kliever), also a Newport police officer (who had come to the bridge), in order to apprise Sgt. Donovan and Lt. Kliever of the status and safety of the operation.
 
 [2]
 
 The entire evacuation procedure took approximately fifteen minutes during which time only two vehicles approached from the westbound side of the bridge.
 

 The first vehicle to encounter the roadblock duly obeyed Sgt. Field’s command to stop. However, instead of stopping, the second vehicle, which was driven by defendant, appeared to gain speed as it swerved from the inside lane into the outside lane. The vehicle sped by Sgt. Field at approximately fifty miles per hour. Sergeant Field testified that defendant passed between the cruiser and the curb through “a very tight space” and that defendant’s vehicle “jolted sharply!,]” appearing as if it may have actually struck the curb. Considering the speed of the vehicle, the time of day, defendant’s failure to obey a command to stop at an emergency roadblock, his erratic driving and his apparent failure to see the numerous emergency flashing lights ahead, Sgt. Field suspected that defendant was driving under the influence of alcohol. He immediately radioed ahead to warn Lt. Kliever of his suspicions and of the fact that defendant had failed to obey his command.
 

 Lieutenant Kliever stopped defendant’s vehicle near the toll booths and examined him for suspicion of driving under the influence. After he subjected defendant to various field sobriety tests, Lt. Kliever turned defendant over to the State Police officers who charged him with driving under the influence and brought him to the State Police barracks in Portsmouth. At the State Police barracks, defendant submitted to a breathalyzer test. The reading from the first test indicated that defendant had a blood alcohol level of 0.176. By the time the second test was administered, his blood alcohol level had risen to 0.180, almost twice the legal limit at the time.
 

 Before trial began, defendant made motions to suppress and to dismiss on the basis -that the Newport police had no jurisdiction to arrest him in Jamestown. Initially, the trial justice granted the motion, subject to reconsideration. She determined that if the officer had probable cause to arrest, then, because he witnessed a misdemeanor, G.L.1956 § 12-7-3 gave him the jurisdictional authority to make that arrest because it doesn’t “establish territorial limits for peace officers!.]”
 

 
 *833
 
 The defendant then renewed his motion to suppress. He asserted that the Newport police did not have jurisdiction to arrest him under the common law and that neither of the two statutory exceptions applied to the facts in this case because the situation did not involve a close pursuit, as requtred by § 12-7-19, and because the Jamestown police never contacted the Newport police department to request emergency police assistance, as required by G.L.1956 § 45-42-1. The trial justice denied the motion finding that, for purposes of § 45-42-1, when Sgt. Donovan accepted Sgt. Field’s offer of help, that acceptance was sufficient to constitute a request by a designee of the Jamestown Police Chief for emergency police assistance from the Newport police. After waiving his right to a jury trial, defendant was convicted in the Superior Court for the crime of driving while intoxicated.
 

 The sole issue on appeal is whether the trial justice erred in denying defendant’s motion to suppress for lack of jurisdiction on the part of the Newport police. We conclude that there was no error.
 

 Jurisdiction of Newport Officers
 

 In the absence of a statutory or judicially recognized exception, the authority of a local police department is limited to its own jurisdiction.
 
 See Page v. Staples,
 
 13 R.I. 306 (1881). There are two exceptions to this general rule. First, when the police are in “hot pursuit” of a suspect, they may cross into another jurisdiction pursuant to § 12-7-19. Second, in emergency situations, it may be necessary and appropriate for the police from one jurisdiction to exercise authority in another jurisdiction. See § 45-42-1;
 
 State v. Locke,
 
 418 A.2d 843, 847 (R.I.1980);
 
 Cioci v. Santos,
 
 99 R.I. 308, 315, 207 A.2d 300, 304 (1965).
 

 In the case presently before us, it is clear that the “hot pursuit” exception was not applicable. The record reveals that Sgt. Field was already in Jamestown when his suspicions concerning defendant were aroused. Thus, this was not a situation where a police officer lawfully pursued a suspect from his or her own jurisdiction into another jurisdiction in accordance with § 12-7-19.
 

 The defendant asserts that § 45-42-1 also was inapplicable to the instant case. He contends that it is only after a police chief, or one of his or her designees, specifically requests emergency assistance from another police department that the members of that second police department obtain authority to act in the other jurisdiction. In this case, defendant asserts that no such request ever was made and he points out that it was the Newport police officers’ own superior officer who ordered them to the scene of the accident. He maintains that although Sgt. Field offered his assistance to Sgt. Donovan, there is no evidence that his offer was officially or verbally accepted. He additionally contends that § 45-^42-1 is penal in nature and a strict construction of that statute clearly would have shown that the Newport police officers did not have jurisdiction to arrest him.
 

 Section 45-42-1 entitled “Emergency police power,” provides:
 

 “When the police chief of a city or town within the state or his or her desig-nee requests emergency police assistance from another police department within the state, the officers responding to the request shall be subject to the authority of the requesting chief and have the same authority, powers, duties, privileges, and immunities as a duly appointed police officer of the city or town making the request, until the requesting chief of police discharges and releases
 
 *834
 
 the assisting police officers to their own departments.”
 

 It is a well-known canon of statutory construction that “penal statutes must be strictly construed in favor of the party upon whom a penalty is to be imposed.”
 
 State v. Smith,
 
 766 A.2d 913, 924 (R.I.2001) (quoting
 
 State v. Bryant,
 
 670 A.2d 776, 779 (R.I.1996)). However, § 45-42-1 is a not a penal statute. It is remedial, and therefore, strict construction would be inappropriate. Instead, we will apply our standard, well-established principles of statutory construction to determine whether the Newport police had jurisdiction to arrest defendant.
 

 “It is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings.”
 
 RIH Medical Foundation, Inc. v. Nolan,
 
 723 A.2d 1123, 1126 (R.I.1999) (quoting
 
 State v. DiCicco,
 
 707 A.2d 251, 253 (R.I.1998)). “When confronted with an unambiguous statute, we must apply the statute as written.”
 
 Id.
 
 (citing
 
 DiCicco,
 
 707 A.2d at 253). “Moreover, when confronted with an unclear or ambiguous statute, there is room for statutory construction and we examine the statute in its entirety in order to ‘glean the intent and purpose of the Legislature.’ ”
 
 Id.
 
 (quoting
 
 In re Advisory to the Governor,
 
 668 A.2d 1246, 1248 (R.I.1996)). In doing so, “this Court ‘will not construe a statute to reach an absurd [or unintended] result.’ ”
 
 Hargreaves v. Jack,
 
 750 A.2d 430, 435 (R.I.2000) (quoting
 
 Kaya v. Partington,
 
 681 A.2d 256, 261 (R.I.1996)).
 

 In denying defendant’s motion to suppress, the trial justice reasoned that Jamestown police officer, Sgt. Donovan, was a designee of the Jamestown police chief because the police chief had scheduled Sgt. Donovan to carry out his duties as a police officer on the night in question. As part of those duties, Sgt. Donovan was required to handle any emergency situation that may have arisen. When the accident occurred, human lives and the safety of all persons on the Newport Bridge were at an extreme risk. The trial justice held that:
 

 “once Sergeant Field had spoken with Sergeant Donovan, once the sergeant had indicated that he did in fact want Sergeant Field’s assistance, that that conferred upon Sgt. Field.at that point the powers, duties and privileges as articulated in 45-42-1.
 

 “ * * * it is clear to this Court that in passing 45-42-1 that the General Assembly clearly envisioned situations where one police department would need the assistance of another police department and would need the assistance for emergency situations such as this.”
 

 After reviewing the record, we cannot say that the trial justice erred in her determinations. The record reveals that Sgt. Donovan was faced with a very serious accident scene, with the possibility of gasoline spilling onto the bridge and causing an explosion. Many lives were in danger due to the number of occupied vehicles that were trapped in the eastbound lanes between the scene of the accident and the toll booths. Time was of the essence in averting a catastrophe. When Sgt. Field arrived at the scene to offer his assistance, Sgt. Donovan immediately seized upon the opportunity to develop an emergency evacuation plan with him. As Sgt. Field’s police cruiser was the only police cruiser available to implement their emergency evacuation plan, it was absolutely crucial that both the cruiser and Sgt. Field be empowered to set up the blockade and to control traffic.
 

 
 *835
 
 The defendant suggests that Sgt. Donovan was required to give an “official or verbal ‘acceptance’ ” to Sgt. Field’s offer of assistance before jurisdiction could be conferred upon the Newport police pursuant to § 45-42-1. We disagree. The statute facilitates police departments in handling emergency situations in the safest and most efficient manner possible. Given the exigent circumstances confronting Sgt. Donovan, it is absurd to have expected him to engage in some stylized ritual in order to officially accept Sgt. Field’s offer of assistance. Such a requirement would have placed an onerous burden upon him when time was of the essence in saving lives and property. When Sgt. Donovan formulated an evacuation plan with Sgt. Field, clearly he was both accepting Sgt. Field’s offer of assistance and requesting Sgt. Field to help him to implement that plan.
 

 Considering that Sgt. Donovan, as desig-nee of the Jamestown police chief, conferred “the same authority, powers, duties, privileges, and immunities as a duly appointed police officer of the * * * town[,]” § 45^12-1, upon the Newport police officers that were present at the scene, they necessarily had jurisdiction to control traffic and to arrest defendant. The policy of the state has been significantly changed from the rigidity of the holding in
 
 Page v.
 
 Staples, 13 R.I. 306 (1881), wherein a sheriff of the county of Providence lost jurisdiction by crossing through the county of Kent in order to reach his ultimate destination which was in Providence.
 
 Page
 
 has been distinguished in
 
 Cioci v. Santos,
 
 99 R.I. 308, 207 A.2d 300 (1965), in which municipal officers from the town of Cumberland transported the defendant from a cell in Cumberland, where he tried to hang himself, to a hospital in Providence. This Court observed “[i]t is our opinion that the dictates of public policy require also that police officers who have a citizen in their lawful custody be not deterred from acting to protect the well-being of such person, particularly in circumstances arising out of an emergency such as existed in the instant case.”
 
 Cioci,
 
 99 R.I. at 315, 207 A.2d at 304.
 

 Similar principles were enunciated in
 
 Locke,
 
 wherein a Charlestown police officer arrested Locke on probable cause to believe that he was intoxicated. The officer then transported the defendant to Westerly to administer a breathalyzer test because the town of Charlestown did not have breathalyzer equipment. The Court followed the reasoning in
 
 Cioci
 
 and held that the officer acted reasonably “to protect the public from a drunken driver and to protect Locke from himself.”
 
 Locke,
 
 418 A.2d at 847.
 

 In the case at bar, the Legislature has made specific provisions for the cooperation of police officers who are from different municipalities in emergency situations where such cooperation requires the empowerment of the officers from another municipality to assist in maintaining the public safety. Certainly, no more dramatic example could be set forth of the need for cooperation by officers of an adjoining municipality to render assistance in maintaining order and protecting the safety of persons imperiled by an accident and fire on a bridge that joins the two communities. This is a classic example of the result which the Legislature intended to accomplish. Such intent should not be frustrated by demanding, unnecessary formalisms. Sergeant Donovan was clearly the desig-nee of the Jamestown Police Chief and was in charge in the midst of an emergency situation. He accepted the cooperation of Sgt. Field and Lt. Kliever. The defendant’s argument that the Newport officers lacked jurisdiction, pursuant to § 45-42-1 is without merit.
 

 
 *836
 
 Conclusion
 

 For the reasons stated, the appeal of the defendant is denied and dismissed. The judgment of conviction and the sentence imposed in the Superior Court are hereby affirmed. The papers in the case may be remanded to the Superior Court.
 
 [3]
 

 [1]
 

 . The trial justice stayed the execution of the sentence pending this appeal.
 

 [2]
 

 . It appears that Sgt. Field did not have radio contact with Sgt. Donovan.
 

 [3]
 

 . It is also worthy of note that the Legislature in P.L.2002, ch. 142, § 1, authorized agreements between adjacent municipalities to provide cooperative assistance by one municipality to the other in non-emergency situations. This statute is not relevant to the case at bar and does require substantial formal approval by both municipal councils. Nevertheless, it is illustrative that legislative policy supports cooperation between municipalities in providing police assistance even in situations where no emergency exists.