**STATE of Rhode Island, ex rel. TOWN OF PORTSMOUTH**

v.

**Joseph H. HAGAN.**

**No. 2001–488–M.P.**

Supreme Court of Rhode Island.

April 1, 2003.

Charles Levesque, Middletown, for Plaintiff.

Kenneth R. Tremblay, Portsmouth, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, and GOLDBERG, JJ.

**OPINION**

GOLDBERG, Justice.

This case is before the Supreme Court on a petition for a writ of certiorari by the petitioner, the State of Rhode Island ex rel. Town of Portsmouth (state or petitioner), seeking review of a District Court order in favor of the respondent, Joseph H. Hagan (Hagan or respondent) that suppressed evidence of a Breathalyzer test

and police observations obtained outside the jurisdiction of the Portsmouth Police Department. This Court issued the writ and stayed the District Court proceedings so that this issue could be resolved before trial.

The essential facts are not in dispute. On May 11, 2001, members of the Portsmouth Police Department arrested Hagan for suspicion of driving under the influence of alcohol and took him to the Portsmouth police station. Hagan agreed to submit to a chemical test while in custody at the station; however officer Steven E. Sullivan (Sullivan), a certified chemical test operator, detected an error in the operation of the Breathalyzer machine.[1] Upon notifying his supervisor of the malfunction, Sullivan was instructed to contact the neighboring Middletown Police Department and take respondent to Middletown in order to use that department's Breathalyzer machine.[2] Once in Middletown, Sullivan conducted a two-phase test of respondent's blood alcohol concentration. Based on the results of this test, Hagan was charged, pursuant to G.L.1956 § 31–27–2, with driving under the influence of liquor, first offense; his Breathalyzer readings exceeded 0.15.

Before trial, respondent filed several motions, including a motion to suppress the Breathalyzer test results and testimony concerning police observations made of respondent outside the territorial limits of Portsmouth.[3] The respondent sought the exclusion of this evidence on the ground that the Breathalyzer test of his blood alcohol level constituted a seizure of evidence during an unlawful arrest in violation of the Fourth Amendment to the United States Constitution and article 1, section 6, of the Rhode Island Constitution. Hagan alleged that the Portsmouth police had no authority to retain custody of him after crossing the town line into Middletown and the incriminating Breathalyzer results should be suppressed at trial as fruits of an unlawful custodial detention. After an evidentiary hearing, the trial judge agreed with respondent's contentions and suppressed the evidence. He based his decision on a finding that the Portsmouth police, while acting in good faith, exceeded their lawful authority, and therefore, the Breathalyzer results and other evidence obtained outside the jurisdiction of the Portsmouth Police Department was inadmissible.[4] Furthermore, he

**1.** Sullivan testified that upon preparing the Breathalyzer machine for testing, the date displayed on the screen was in error and the machine would not function.

**2.** There is some question about respondent's willingness to be taken to Middletown for testing. The respondent suggests that when informed that the police intended to transport him, he said that he did not want to go, and was going only because he was forced to do so. On cross-examination by defense counsel at the motion hearing, Sullivan recollected that Hagan was confused, but he did not recall any statements made by Hagan in that regard.

**3.** In addition to this motion to suppress evidence, respondent moved to suppress based on insufficient proof of the validity of the

Breathalyzer machine and test results, and on the ground that the machine was malfunctioning at the time the tests were administered. He also filed a preliminary motion to dismiss based on an anticipated lack of jurisdiction in the District Court if the court were to suppress the Breathalyzer test results and only an observation case remained. Lastly, respondent made a preliminary challenge to the constitutionality of the charging statute, G.L.1956 § 31–27–2. None of the issues in these motions is presently before us; petitioner only challenges the grant of the first motion to suppress.

**4.** The parties stipulated to the fact that the stop of Hagan's vehicle was lawful, and that there was reasonable suspicion to offer the Breathalyzer test and probable cause to arrest.

found that no emergency existed in this case, and that the Portsmouth police had failed to exhaust the reasonable testing alternatives available to them before taking Hagan to Middletown.

The trial judge afforded petitioner time to seek review in this Court and, two days before trial was scheduled to commence, a petition for certiorari was filed and a stay of all proceedings was requested. On October 25, 2001, this Court granted the stay and subsequently issued the writ.

■ Before this Court, petitioner argued that at all times pertinent to this litigation, Hagan's constitutional rights were not violated. Furthermore, the state asserts that suppression of the results of a Breathalyzer test under the circumstances of this case is unwarranted, notwithstanding any alleged constitutional violation, based upon Hagan's consent to be tested, and his ultimate acquiescence to the test in Middletown. The state maintains that Hagan's consent constitutes a waiver of his right to object to the admissibility of the test results on jurisdictional grounds. The state asks this Court to revisit related precedent on this issue, and to clarify and expand the instances in which an officer legally may take people in custody outside the territorial limits of the police department for routine administrative matters, such as arraignments, medical assistance and blood alcohol testing. Hagan, on the other hand, seeks to distinguish this case from previous decisions of this Court that recognized an exception to the jurisdictional confines of a peace officer's authority. He highlights the options that were available to the Portsmouth police before they took him to Middletown, including assis-

tance from the State Police at their Portsmouth barracks,[5] or by otherwise obtaining a urine or blood sample within the town. He applauds the trial judge's findings that no emergency situation warranting a trip to Middletown was apparent, such as considerations for the safety of respondent or the public, or a substantial risk of loss of blood alcohol evidence because of the passage of time.

■ It is well settled that this Court's review on certiorari "is restricted to an examination of the record to determine whether any competent evidence supports the decision, and whether the decision maker made any errors of law in that ruling," and whether the decision was "patently 'arbitrary, discriminatory, or unfair.'" *Asadoorian v. Warwick School Committee*, 691 A.2d 573, 577 (R.I.1997) (quoting *D'Ambra v. North Providence School Committee*, 601 A.2d 1370, 1374, 1375 (R.I.1992)); *see also Brouillette v. Department of Employment and Training Board of Review*, 677 A.2d 1344, 1346 (R.I. 1996). That said, we shall review this Court's previous pronouncements on the boundaries and limits of a municipal police officer's jurisdiction within the state.

This Court first recognized that the authority of a police department is limited to its own jurisdiction in *Page v. Staples*, 13 R.I. 306 (1881). In that case, a Providence County sheriff, admittedly for his own convenience, took a prisoner through Kent County on his way to admitting that defendant to bail at the Providence County jail. This Court subsequently sustained the prisoner's action of trespass for false imprisonment and ordered a new trial. *Id.*

---

**5.** The respondent emphasizes that the nearest state police barracks are in the town of Portsmouth, between the Portsmouth and Middletown police stations. The Portsmouth police passed directly in front of the state barracks while en route to Middletown to test respon-

dent's alcohol concentration level. The trial judge noted that the state police have statewide jurisdiction pursuant to G.L.1956 § 42–28–19, thereby making it a viable alternative testing location.

at 308. We held that in the absence of a statutory exception, the power of a sheriff is limited to his own county, or in the limited circumstances in which the officer has custody of a prisoner upon a writ of habeas corpus, he may take the prisoner to the place where the writ is returnable. Additionally, an officer may in "fresh pursuit" "retake" a prisoner into custody after pursuing him across county lines. *Id.* at 307–08. The trial judge in the present case relied on *Page* for the basic premise that an officer's authority may not readily be extended beyond the limits of the municipality and that the circumstances presented in this case did not satisfy any recognized exception to this archaic holding.

However, the jurisdictional borders confining the authority of the state's various police departments, as enunciated in *Page*, have become blurred by time and necessity. In the recent case of *State v. Ceraso*, 812 A.2d 829, 835 (R.I.2002), this Court acknowledged that "[t]he policy of the state has been significantly changed from the rigidity of the holding in *Page* * * *." In *Ceraso*, we were confronted with a situation in which a police officer from Newport, while assisting the Jamestown police with a rollover accident on the Jamestown side of the Newport Bridge, initiated the stop of a driver on suspicion of driving under the influence of alcohol. On appeal from the conviction, we upheld the officer's authority to lawfully arrest Ceraso in Jamestown, pursuant to the emergency police power exception set forth in G.L.1956 § 45–42–1.[6]

As noted in *Ceraso*, the authority of a police officer to take a defendant already in custody across territorial lines of the officer's jurisdiction was recognized in *Cioci v. Santos*, 99 R.I. 308, 315, 207 A.2d 300, 304 (1965), in which Cumberland police took a juvenile suspect in custody on suspicion of burglary into the cities of Providence and Pawtucket for medical treatment after a suicide attempt. In *Cioci* we held that police officers who have a citizen in lawful custody ought not be deterred from acting to protect the well-being of the prisoner for fear of nullifying the lawfulness of the initial arrest. *Id.* Moreover, we have determined that under certain circumstances a police officer is justified in taking a defendant to a different municipality to conduct a Breathalyzer test. In *State v. Locke*, 418 A.2d 843 (R.I.1980), the operator of a motor vehicle suspected of driving under the influence of alcohol was detained and arrested in Charlestown by an officer from that town. The officer immediately took the driver to the neighboring town of Westerly because Charlestown had not yet acquired a Breathalyzer testing device. We determined that the Charlestown police officer retained custody of the defendant at all times. On public policy grounds, we held that the officer was justified under these emergency circumstances, in the interest of protecting the driver from harming himself or the public at large and the need to obtain an accurate blood alcohol level without undue delay. *Id.* at 848. In contrast to *Page*, we concluded that the officer was traveling for the purpose of fulfilling his official duties, not for mere convenience, and the test

---

**6.** General Laws 1956 § 45–42–1 provides as follows:

"**Emergency police power.**—When the police chief of a city or town within the state or his or her designee requests emergency police assistance from another police department within the state, the officers responding to the request shall be subject to the authority of the requesting chief and have the same authority, powers, duties, privileges, and immunities as a duly appointed police officer of the city or town making the request, until the requesting chief of police discharges and releases the assisting police officers to their own departments."

results were properly admitted into evidence. *Id.* at 847.

Additionally, the General Assembly has authorized the state's municipal police officers to make arrests outside the territorial boundaries of a city or town under limited circumstances. Specifically, § 45–42–1 sets forth the arrest power of an officer who responds to a request for emergency assistance from another municipal police department. *See Ceraso,* 812 A.2d at 834–35. Further, G.L.1956 § 12–7–19 [7] governs the authority of an officer to make an extraterritorial arrest of a person after "close pursuit." *See State ex rel. Town of Middletown v. Kinder,* 769 A.2d 614 (R.I. 2001) (per curiam).

In his decision granting respondent's motion to suppress the evidence obtained outside the confines of Portsmouth, the trial judge relied on *State v. Marran,* 1996 WL 937019, 1996 R.I.Super. LEXIS 125, a 1996 Superior Court decision. In that case, Marran had been stopped in Newport for a driving violation and thereafter was arrested under suspicion of operating under the influence of alcohol. After Newport's Breathalyzer machine malfunctioned, the defendant was driven to Middletown and asked to submit to a Breathalyzer examination. The trial judge suppressed the breathalyzer test results and observations made by police in Middletown as a product of an unlawful detention outside the arresting officer's jurisdiction. He found that the Newport police had the reasonable alternative of taking blood or urine from the defendant at a hospital within the jurisdiction of the arresting authority. Additionally, he found that no exigent circumstances existed, since the defendant posed no safety threat to himself or others, and that alternative blood or urine tests at the hospital would have promptly preserved the blood alcohol evidence. In keeping with *Marran,* the trial judge in the case before us reached the same conclusion and found that no emergent circumstances were present, and that other reasonable options were available to the Portsmouth police, such as taking a blood or urine sample or utilizing the nearby State Police barracks. Accordingly, he suppressed all evidence that was obtained beyond the boundaries of the town.

In quashing the District Court decision, we realign these perceived boundaries of law enforcement authority and the circumstances under which they apply. Because of our holding that respondent remained in the lawful custody of the Portsmouth police, we need not reach the issue of whether, by his consent to the test, Hagan waived the jurisdictional challenge.

Whether sanctioned by statute, as in *Ceraso,* or by this Court, as in *Locke,* we consistently have drawn the distinction between an arrest of a suspect that must, both constitutionally and by statute,[8] rest

---

7. General Laws 1956 § 12–7–19 provides as follows:

"**Arrest after close pursuit by officers from cities or towns.**—Any member of a duly organized municipal peace unit of another city or town of the state who enters any city or town in close pursuit of a person and continues within any city or town in such close pursuit of a person in order to arrest him or her on the ground that he or she has violated the motor vehicle code in the other city or town shall have the same authority to arrest and hold in custody the person as members of a duly organized municipal peace unit of any city or town have to arrest and hold in custody a person on the ground that he or she has violated the motor vehicle code in any city or town."

8. The Legislature has provided limited authority for the arrest of a person by a peace officer upon probable cause but without a warrant. *See* § 12–7–3 and § 12–7–4. Similarly, by its decisional law, this Court has long recognized the state and federal constitutional protections against unreasonable seizures, and hence the limits to an officer's authority to arrest a person, based upon probable cause

upon probable cause, from the circumstance in which a prisoner, already in lawful custody, is taken outside a municipality for legitimate law enforcement purposes. In this case, Hagan had been lawfully arrested, based upon probable cause, and was in the legitimate custody of the Portsmouth police. It was only while acting in accordance with their duty to gather and preserve evidence for use at trial, that the officers drove Hagan to Middletown for a Breathalyzer test. We are thus satisfied that the Portsmouth police acted appropriately and did not relinquish lawful custody of their prisoner at the town line. This conclusion rests upon the distinction between an arrest and seizure of a suspect outside a municipality's borders—an authority that is limited in scope and recognized only in narrowly-defined circumstances—and the extraterritorial transport of a prisoner who is in lawful custody, for the performance of legitimate law enforcement duties, which we sanction today.

This holding is consistent with our previous decisions of *Locke, Cioci,* and *Ceraso.* Although well-reasoned, the Superior Court decision in *Marran* is not binding upon this Court and we decline to follow it. As a matter of public policy, whether an officer's responsibilities include an extraterritorial transport for access to a blood-alcohol testing machine or any other duty in connection with an arrestee who is in lawful custody, we decline to handcuff the state's law enforcement officials in the performance of their legitimate duties. Most notably under the circumstances now before us, in which the officer acted in apparent good faith, upon consent, and in light of the urgency of obtaining blood alcohol evidence before it is metabolized in the blood, we are satisfied that Sullivan acted pursuant to his lawful authority. This de-

cision is well-aligned with other instances of extraterritorial transport of a person in lawful custody, such as travel to court for a bail-setting appearance or for initial appearance after apprehension pursuant to a warrant, or to a medical facility for medical attention as in *Cioci.*

Although we are cognizant of the strong public interest underlying jurisdictional restraints over law enforcement personnel and are mindful that the Legislature has granted limited authority to an officer to arrest a suspect outside his or her jurisdiction, we acknowledge the practical realities of police investigations into unlawful conduct. A police officer may take a prisoner already in lawful custody to another municipality to carry out legitimate law enforcement duties. However, the limited authority of an officer to make an arrest outside the boundaries of his or her municipality remains unchanged. *See State v. Ceraso,* 812 A.2d 829 (R.I.2002).

For the foregoing reasons, the petition for certiorari is granted and the order of the District Court is quashed. The papers in this case are remanded to the District Court with our decision endorsed thereon.

to believe that the suspect has committed a crime. *See State v. Guzman,* 752 A.2d 1, 3–4 (R.I.2000).