**Sarah BROUSSEAU, a minor By and Through her parent and next friend Bethany BROUSSEAU**

**v.**

**TOWN OF WESTERLY, By and Through its Treasurer, Pasquale J. PERRI, Jr.; Joy Sacco, alias, individually and in her official capacity as Principal of the Babcock Middle School employed by the Town of Westerly; John Carson, alias, individually and in his official capacity** as Assistant Principal of Babcock Middle School employed by the Town of Westerly; and Camille Martin, alias, in her official capacity as a lunchroom aide at the Babcock Middle School employed by the Town of Westerly.

**C.A. No. 96–365–T.**

United States District Court,
D. Rhode Island.

June 11, 1998.

Richard A. Sinapi, Sinapi Law Associates, Cranston, RI, for Plaintiffs.

Mark T. Nugent, Morrison, Mahoney & Miller, Providence, RI, for Defendants.

### MEMORANDUM AND ORDER

TORRES, District Judge.

Bethany Brousseau brought this action pursuant to 42 U.S.C. § 1983, on behalf of her daughter, Sarah, a sixth grade student in the Westerly school system. The gravamen of the complaint is that Sarah's Fourth and Fourteenth Amendment rights were violated by school officials when they conducted a warrantless search of Sarah and her classmates in an effort to locate a knife that was missing from the school cafeteria. The case presently is before the Court for consideration of cross motions for summary judgment.

The issue presented is whether the search was unreasonable. Because I find that the search was eminently reasonable under the circumstances, the plaintiff's motion for summary judgment is denied and the defendants' cross motion for summary judgment is granted.

### Facts

The facts are simple and undisputed. The parties have stipulated that on January 10, 1996, Sarah and other students at the Babcock Middle School ate pizza for lunch in the school cafeteria. One of the cafeteria workers was unable to find a knife that was used to cut the pizza. The missing knife was approximately 13½ inches long and had a nine inch serrated metal blade.

These facts were communicated to John Carson, the assistant principal, who, along with another school administrator and several cafeteria workers, walked around the cafeteria looking for the knife. When they could not locate it, Carson asked any student who knew of its whereabouts to come forward. In the absence of any response, Carson obtained authorization from Joy Sacco, the school principal, to conduct a pat-down search of the students present in the cafeteria.

Male and female students were assembled in separate lines. Carson and another male teacher patted down the male students while two female lunch room aides patted down the female students. Sarah, who was then ten years old, was one of the students searched. Sarah's search took only a few seconds and consisted of patting the area in the vicinity of her front and back pockets and around her ankles.

The knife was not found during the search, but, later, it was discovered in an empty pizza box contained in a dumpster behind the cafeteria.

### Discussion

Sarah asserts that the search of her person was unreasonable and, therefore, that it violated her rights under the Fourth and Fourteenth Amendments to the United States Constitution. In addition, she alleges that the search violated both the Rhode Island Constitution's prohibition against unreasonable searches (Article 1, § 6) and R.I. Gen. Laws § 9–1–28.1(a)(1) which proscribes unreasonable intrusions into an individual's privacy.

The threshold question with respect to all of these claims is whether the search was unreasonable. Since the facts are undisputed, the parties agree that making that determination is a matter of law appropriate for summary judgment.

### I. The Fourth Amendment

#### A. The Analytical Framework

The Fourth Amendment's prohibition against "unreasonable searches and seizures" is applicable to searches of students conducted by public school officials. *New Jersey v. T.L.O.*, 469 U.S. 325, 333, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985). However, determining whether a search is "reasonable" "depends on the context within which a search takes place [and] . . . requires 'balancing the need to search against the invasion which the search entails.'" *Id.* at 337, 105 S.Ct. 733 (*quoting Camara v. Municipal Court*, 387 U.S. 523, 536–37, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967)). Thus, in the public school setting, the "'reasonableness' inquiry cannot disregard the schools' custodial and tutelary responsibility for children." *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 656, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995). Nor, can it disregard the fact that, in some re-

spects, "students within the school environment have a lesser expectation of privacy than members of the population generally." *Id.* at 657, 115 S.Ct. 2386 (*quoting T.L.O.,* 469 U.S. at 348, 105 S.Ct. 733 (Powell, J., concurring)).

■ Accordingly, the Supreme Court has said that "the school setting requires some easing of the restrictions to which searches by public authorities are ordinarily subject." *T.L.O.,* 469 U.S. at 340, 105 S.Ct. 733. More specifically, the Court has held that the relevant inquiry is whether, under the circumstances, "the search is one that a reasonable guardian and tutor might undertake." *Vernonia,* 515 U.S. at 665, 115 S.Ct. 2386.

■ There is no litmus test for determining whether a particular school search was reasonable. That task involves a two-part inquiry:

first, one must consider "whether the ... action was justified at its inception" ... second, one must determine whether the search as actually conducted "was reasonably related in scope to the circumstances which justified the interference in the first place."

*T.L.O.,* 469 U.S. at 341, 105 S.Ct. 733 (*quoting Terry v. Ohio,* 392 U.S. 1, 20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). The factors to be considered in assessing the reasonableness of a search are:

1. The nature of the privacy interest upon which the search intrudes.

2. The character of the intrusion.

3. The nature and immediacy of the governmental concern at issue.

4. The efficacy of the means employed in meeting that concern.

*Vernonia,* 515 U.S. at 654–60, 115 S.Ct. 2386.

B. *Application to this Case*

1. *The Nature of the Privacy Interest*

■ Not all asserted expectations of privacy are protected by the Fourth Amendment. The Fourth Amendment protects only those expectations "that society recognizes as 'legitimate.'" *Id.* at 654, 115 S.Ct. 2386.

■ Whether a particular expectation of privacy is "legitimate" depends upon the circumstances. *Id.* Therefore, "while children assuredly do not 'shed their constitutional rights ... at the schoolhouse gate,' ... the nature of those rights is what is appropriate for children in school." *Id.* at 655–56, 115 S.Ct. 2386 (*quoting Tinker v. Des Moines Indep. Community Sch. Dist.,* 393 U.S. 503, 506, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969)).

■ As already noted, a minor student who has been committed to the care and custody of school officials, has a somewhat lesser expectation of privacy than an adult member of the general population. *Id.* at 654–56, 115 S.Ct. 2386; *T.L.O.,* 469 U.S. at 340, 105 S.Ct. 733. However, that does not mean that a student's privacy rights are non-existent or that school officials may intrude upon them without sufficient justification.

■ In this case, Sarah clearly had a legitimate expectation of privacy regarding the contents of her pockets. She also had an equally legitimate expectation that she would not be subjected to a search that included unwanted and unjustified touching of her person. Thus, the real issue is the extent to which the search intruded on those expectations and whether there was sufficient justification for that intrusion.

2. *Character of the Intrusion*

■ The intrusiveness of a search is a function of both the manner in which it is conducted and the nature of the information that it discloses. *Vernonia,* 515 U.S. at 658, 115 S.Ct. 2386. There is no absolute requirement that the search be "the 'least intrusive' search practicable [in order to] be reasonable under the Fourth Amendment." *Id.* (*quoting Skinner v. Railway Labor Executives' Ass'n,* 489 U.S. 602, 629 n. 9, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989)). However, the availability of less intrusive alternatives clearly is a consideration. *See DesRoches v. Caprio,* 974 F.Supp. 542, 550 (E.D.Va.1997).

■ In this case, the search was limited both in terms of the methods employed and the information revealed. Moreover, its scope was restricted to what was reasonably

necessary to ascertain whether any of the students possessed the missing knife.

The search consisted solely of a "pat-down" of the areas around Sarah's pockets and ankles where a knife like the one reported missing might be concealed. Nothing was removed from her pockets nor were the contents of the pockets examined. Moreover, the students were patted down by school officials of the same gender and the search of each student lasted for only a few seconds.

In short, the extent to which the search intruded on Sarah's privacy was relatively limited and it was conducted in the least intrusive manner possible consistent with its purpose.

### 3. *Nature and Immediacy of Governmental Concern*

One cannot determine "in isolation" whether a particular governmental concern is sufficient to justify searches in general. *Vernonia*, 515 U.S. at 661, 115 S.Ct. 2386. The relevant inquiry is whether the concern in question is *"important enough* to justify the particular search at hand." *Id.* (emphasis in original).

In school searches, an assessment of the weight and urgency accorded to the governmental concern cited as justification for the search turns, largely, on the nature of the items that are the object of the search. The interest of school officials in searching for drugs or weapons, ordinarily, is deemed more compelling and of greater urgency than searches for other kinds of contraband "because of the need to protect the safety and welfare of students." *DesRoches*, 974 F.Supp. at 548.

In this case, school officials had ample reason to be concerned about the safety and welfare of the children entrusted to their care. The knife in question had a nine inch serrated blade capable of inflicting serious or even fatal injury. Furthermore, if, as school officials reasonably suspected, the knife had been taken by a student, it was reasonable to infer that the culprit might have taken it with the intent to injure someone. Even assuming that the student taking the knife had more benign motives, the knife's nine inch serrated blade created a significant risk of serious accidental injury.

Moreover, under these circumstances, it cannot be disputed that immediate action was required. Reasonable efforts to find the knife had been exhausted. Furthermore, the students could not be indefinitely held in the cafeteria in the hope that the knife might, somehow, turn up. On the other hand, allowing the students to leave the cafeteria without first determining whether any of them possessed the missing knife would have been an abrogation of school officials' overriding responsibility for the students' safety and welfare.

In short, given the magnitude and immediacy of the potential threat, it is difficult to imagine a more compelling or urgent governmental concern than the one that prompted the search at issue.

### 4. *The Efficacy of the Search*

It is clear that the search conducted by Babcock School officials was an effective method of addressing the concern that prompted the search. School officials had reasonable grounds to believe that one of the students in the cafeteria possessed the missing knife and the limited search that they conducted was the most direct and effective means of locating it.

Indeed, the search that was conducted appears to have been the only effective method of addressing the concern about the students' safety and welfare. Even with the benefit of 20/20 hindsight, the plaintiff, herself, has failed to suggest any alternative course of action that would have addressed that concern effectively.

### C. *Summary*

Briefly stated, Babcock School officials had ample justification for searching the students present in the cafeteria when the knife in question could not be located. Moreover, the scope of the search and the methods employed were restricted to what was reasonably necessary to achieve the purpose of the search.

■ Considering the relatively limited nature of the intrusion; the compelling safety concerns prompting the search and the absence of any effective alternative for addressing that concern, it is abundantly clear that the search conducted by Babcock School officials was reasonable under the circumstances.

Before conducting the search, school officials exhausted all available alternatives. They first walked through the cafeteria looking under tables and in other areas where the knife might have been placed. They then requested that any student having knowledge of the knife's whereabouts come forward. The search was conducted only after those efforts had failed.

In addition, the search was limited to a brief "pat-down" designed to determine only whether a student had the missing knife concealed on his or her person. School officials did not attempt to determine what else might have been in the students' pockets.

Briefly stated, the choice confronting school officials was whether to search the students and run the risk that some of them and/or their parents might object to the intrusion; or, whether to do nothing and run the risk that some of the students entrusted to their care might be seriously injured. Under these circumstances, the decision to search and the manner in which the search was carried out were eminently reasonable and a decision to do nothing would have been an abrogation of their responsibilities.

II. *The State Law Claims*

■ The determination that the search, in question, was reasonable is dispositive of Sarah's state law claims. With minor exceptions not applicable here, Art. 1, § 6 of the Rhode Island Constitution is co-extensive with the Fourth Amendment of the United States Constitution. *See Duquette v. Godbout*, 471 A.2d 1359, 1361 (R.I.1984) ("[I]n most contexts the Fourth Amendment provides ample protection against unreasonable searches and seizures. The decision to depart from minimum standards and to increase the level of protection should be made guardedly and should be supported by a principled rationale.'") (*quoting State v. Benoit*, 417 A.2d 895, 899 (R.I.1980)). Like its federal counterpart, it prohibits only "unreasonable" searches.

■ Similarly, R.I. Gen. Laws § 9–1–28.1(a)(1) confers a cause of action only for *unreasonable* invasions of privacy. Although there are no Rhode Island cases construing the statute in the context of searches by state officials, it is difficult to believe that the Rhode Island General Assembly intended to impose liability for constitutionally permissible searches by governmental officials.

### Conclusion

For all of the foregoing reasons, defendants' Motion for Summary Judgment is granted, and the plaintiff's Motion for Partial Summary Judgment is denied.

IT IS SO ORDERED.