# United States Court of Appeals
## For the First Circuit

No. 11-2341

UNITED STATES OF AMERICA,

Appellee,

v.

KEVIN RYAN,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

Before

Howard, Ripple[*] and Thompson,
Circuit Judges.

Gary G. Pelletier, with whom Pelletier Clarke & Caley, LLC was on brief, for appellant.
Mark T. Quinlivan, Assistant United States Attorney, with whom Carmen M. Ortiz, United States Attorney, was on brief, for appellee.

September 30, 2013

---

[*] Of the Seventh Circuit, sitting by designation.

**HOWARD, <u>Circuit Judge</u>**.  A federal law enforcement officer makes a lawful traffic stop and sees that the driver of the stopped car is intoxicated.  He arrests the driver, even though the officer is outside of the jurisdiction in which he is authorized to make arrests.  At the driver's trial, does the Fourth Amendment's prohibition against "unreasonable searches and seizures" require the court to exclude evidence obtained after the arrest?  We hold, in the circumstances of this case, that it does not.

## I. Background

On the night of August 31, 2007, appellant Kevin Ryan was driving within the Charlestown Navy Yard, which is part of the Boston National Historic Park (the "Park"), a federal enclave. From his marked cruiser, United States Park Ranger David LaMere saw Ryan driving over the center line of the road.  LaMere followed Ryan, turned on his cruiser lights, and stopped Ryan to issue a citation. By the time LaMere turned on his lights, however, he and Ryan had left the Charlestown Navy Yard and were no longer on federal land. LaMere noticed that Ryan smelled strongly of alcohol, was slurring his speech, and had difficulty retrieving his vehicle registration. LaMere asked Ryan if he had been drinking, and Ryan admitted that he had consumed four or five beers.  Ryan voluntarily took four field sobriety tests, which "showed several indications that he was impaired," according to LaMere.  Believing that Ryan was intoxicated and could not safely operate his vehicle, LaMere

arrested Ryan and took him to the Park's prisoner processing area.[1] There, Ryan refused to submit to a test to determine the concentration of alcohol in his breath.

The government charged Ryan with three federal violations: operating a motor vehicle under the influence, 36 C.F.R. § 4.23(a)(1); unsafe operation of a motor vehicle, id. § 4.22(b)(1); and refusal to submit to a breath alcohol test, id. § 4.23(c)(2). Ryan moved to suppress evidence arising from his arrest on the grounds that LaMere had no statutory authority to arrest him outside the Park. While there is no geographical limit on the ability of United States Park Rangers to "conduct investigations of offenses against the United States committed in [the National Park] system," 16 U.S.C. § 1a-6(b)(3), they may make warrantless arrests only "within that system," id. § 1a-6(b)(1).[2] The magistrate judge presiding over the case agreed that LaMere lacked statutory authority to arrest Ryan, but she refused to suppress the evidence because the arrest was not an unreasonable seizure within the meaning of the Fourth Amendment. Following a trial, the magistrate judge found Ryan guilty of unsafe operation

---

[1] The government argued before the district court that LaMere's actions did not constitute an arrest, but the court disagreed. The government no longer disputes this issue.

[2] There is an exception to this rule when "the person to be arrested is fleeing [from the National Park system] to avoid arrest," 16 U.S.C. § 1a-6(b)(1), but the government does not argue that Ryan was fleeing from LaMere.

and refusal to submit to a breath alcohol test, and not guilty of operating under the influence. Ryan appealed his conviction to a district judge, who affirmed the magistrate judge's decision not to suppress the evidence gathered after the arrest. Ryan timely appealed to our court.

## II. Analysis

When reviewing the denial of a motion to suppress, we review the district court's factual findings for clear error and its legal conclusions de novo. United States v. Kearney, 672 F.3d 81, 88-89 (1st Cir. 2012). Here, there are no disputed factual findings and only one disputed legal conclusion: that the Fourth Amendment does not require exclusion of evidence gathered after an arrest made outside of a federal law enforcement officer's statutory jurisdiction. Ryan does not claim that anything about his arrest was unconstitutional other than LaMere's lack of authority.

The Supreme Court has not spoken to this precise issue, but it did hold in Virginia v. Moore, 553 U.S. 164 (2008), that the Fourth Amendment does not require the exclusion of evidence obtained in a search incident to an arrest that violates state law. In Moore, two police officers in the city of Portsmouth, Virginia arrested the defendant for driving on a suspended license. Id. at 166-67. When conducting a search incident to that arrest, they discovered crack cocaine and cash, which led to state-law charges

against the defendant for possession of cocaine with intent to distribute. Id. at 167. Because driving on a suspended license is not an arrestable offense under Virginia law, the defendant moved to suppress the evidence obtained in the search. Id. The trial court denied the motion, and the defendant was convicted after a bench trial. Id. at 168. On appeal, the Supreme Court held that the Fourth Amendment did not prohibit the defendant's arrest or require the exclusion of evidence. Id. at 176, 178.

The Court's decision in Moore relied on both the history and policy underlying the Fourth Amendment's protection against "unreasonable searches and seizures."

> The immediate object of the Fourth Amendment was to prohibit the general warrants and writs of assistance that English judges had employed against the colonists. That suggests, if anything, that founding-era citizens were skeptical of using the rules for search and seizure set by government actors as the index of reasonableness. . . . No early case or commentary, to our knowledge, suggested the Amendment was intended to incorporate subsequently enacted statutes. None of the early Fourth Amendment cases that scholars have identified sought to base a constitutional claim on a violation of a state or federal statute concerning arrest.

Id. at 168-69 (citations omitted). Finding no indication in the history of the Fourth Amendment that an arrest in violation of a statute would be an unreasonable seizure, the Court analyzed the arrest "in light of traditional standards of reasonableness 'by assessing, on the one hand, the degree to which it intrudes upon an

-5-

individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" Id. at 171 (quoting Wyoming v. Houghton, 526 U.S. 295, 300 (1999)). On this point, the Court held that "when an officer has probable cause to believe a person committed even a minor crime in his presence, the balancing of private and public interests is not in doubt. The arrest is constitutionally reasonable." Id. Whether a state law limits the officer's power to arrest is irrelevant, the Court held, because "when States go above the Fourth Amendment minimum, the Constitution's protections concerning search and seizure remain the same." Id. at 173.

Moore would readily dispose of Ryan's arguments for suppressing the evidence against him, but for two distinctions between that case and this one. First, Moore involved a seizure in violation of state law, not federal law. Second, the law at issue in Moore limited an officer's power to arrest based on the type of offense committed, while the law at issue here limits the territory in which LaMere had the power to arrest. Neither distinction provides a reason to suppress the evidence against Ryan.

Moore itself suggests that neither federal nor state statutes affect whether a seizure is unreasonable under the Fourth Amendment: "None of the early Fourth Amendment cases that scholars have identified sought to base a constitutional claim on a violation of a state or federal statute concerning arrest." Id.

at 169 (emphasis added).  Although much of the discussion in <u>Moore</u> focused on issues specific to state law, the Court repeatedly stated that an arrest supported by probable cause is constitutionally reasonable, <u>id.</u> at 171, 173, 175, 177-78, without implying an exception for an arrest in violation of a federal statute.[3]

We ourselves have "not resolved whether an arresting officer's lack of authority under . . . federal law to conduct an otherwise constitutionally valid arrest constitutes an unreasonable seizure under the Fourth Amendment."  <u>Santoni</u> v. <u>Potter</u>, 369 F.3d 594, 598 (1st Cir. 2004).  Nevertheless, our precedent, like <u>Moore</u>, suggests that such an arrest does not warrant the exclusion of evidence.  In <u>United States</u> v. <u>Hensel</u>, 699 F.2d 18 (1st Cir. 1983), officers of the United States Coast Guard, along with Canadian law enforcement officers, searched a vessel off the coast of Canada and discovered several tons of marijuana.  The defendant argued that evidence gathered during the search should have been suppressed because the Coast Guard officers exceeded their statutory authority

---

[3] The Supreme Court has suppressed evidence for violations of federal statutes in a "few cases," but only when "the excluded evidence arose directly out of statutory violations that implicated important Fourth and Fifth Amendment interests." <u>Sanchez-Llamas</u> v. <u>Oregon</u>, 548 U.S. 331, 348 (2006).  Ryan has not identified an important Fourth or Fifth Amendment interest implicated by his arrest.  In addition, some federal statutes explicitly prohibit the use of evidence obtained in violation of those statutes.  <u>E.g.</u>, 18 U.S.C. § 2518(10)(a)(i) (permitting a motion to suppress the contents of an unlawfully intercepted communication).  The statute at issue in this case contains no such prohibition.

to conduct searches. Id. at 26. We assumed without deciding that the officers exceeded their authority, but we stated that "[t]he exclusionary rule was not fashioned to vindicate a broad, general right to be free of agency action not 'authorized' by law, but rather to protect certain specific, constitutionally protected rights of individuals." Id. at 29. As the Supreme Court would later do in Moore, we emphasized that "the search did not invade [the defendant's] Fourth Amendment privacy interests, for the search was supported by 'probable cause.'" Id. at 30. Therefore, we "reject[ed] the argument that the Coast Guard's violation of the statute . . . in [that] case require[d] us to apply the exclusionary rule." Id. The same is true here: Because Ryan's arrest was supported by probable cause, it did not violate his Fourth Amendment privacy interests, and the district court was not required to exclude the evidence obtained following the arrest.

As to the territorial limit on LaMere's jurisdiction, Moore again implies that an extraterritorial arrest is not a per se violation of the Fourth Amendment. In Moore, the Supreme Court stated without qualification that an arrest supported by probable cause is constitutionally reasonable. To be sure, the Court has clarified that a balancing of interests is appropriate for "searches or seizures conducted in an extraordinary manner, unusually harmful to an individual's privacy or even physical interests--such as, for example, seizure by means of deadly force,

-8-

unannounced entry into a home, entry into a home without a warrant, or physical penetration of the body." Whren v. United States, 517 U.S. 806, 818 (1996) (citations omitted). But in Whren, the Court held that a traffic stop by plainclothes officers "does not remotely qualify as such an extreme practice." Id. Likewise, for an officer to arrest an obviously intoxicated driver just outside that officer's territorial jurisdiction, after a lawful traffic stop, is "not remotely" akin to the invasions of privacy that might call for the exclusion of evidence.[4]

The weight of authority from other courts of appeals supports our conclusion. Although we observed in Santoni that the courts are divided on "whether an arresting officer's lack of authority under state or federal law to conduct an otherwise constitutionally valid arrest constitutes an unreasonable seizure under the Fourth Amendment," 369 F.3d at 598, subsequent decisions have rejected the proposition that this lack of authority makes an arrest per se unreasonable. The Tenth Circuit's decision in Ross v. Neff, 905 F.2d 1349 (10th Cir. 1990), which we cited in Santoni, has since been limited to cases involving warrantless arrests by state police on federal tribal land. United States v. Jones, 701 F.3d 1300, 1312 (10th Cir. 2012) (holding that an arrest in Kansas

---

[4] Because Ryan was arrested after a lawful traffic stop, we need not consider whether suppression would be appropriate if LaMere were acting in circumstances wholly divorced from his authority (for example, by arresting someone while on vacation in another state).

by Missouri police officers did not violate the Fourth Amendment). And the Second Circuit's decision in <u>Malone</u> v. <u>County of Suffolk</u>, 968 F.2d 1480 (2d Cir. 1992), which we also cited in <u>Santoni</u>, must be read in light of <u>United States</u> v. <u>Wilson</u>, 699 F.3d 235 (2d Cir. 2012), in which that court found no violation of the Fourth Amendment when an extraterritorial arrest violated New York law and federal policy. Other courts of appeals have agreed that an extraterritorial arrest may comply with the Fourth Amendment. <u>United States</u> v. <u>Sed</u>, 601 F.3d 224 (3d Cir. 2010); <u>United States</u> v. <u>Goings</u>, 573 F.3d 1141 (11th Cir. 2009); <u>Engleman</u> v. <u>Deputy Murray</u>, 546 F.3d 944 (8th Cir. 2008); <u>Pasiewicz</u> v. <u>Lake Cnty. Forest Preserve Dist.</u>, 270 F.3d 520 (7th Cir. 2001).[5]

In short, Ryan's arrest does not constitute the kind of invasion of privacy that the Fourth Amendment prohibits. The district court correctly refused to exclude the evidence that LaMere obtained after that arrest.

### III. Conclusion

The judgment of the district court is **<u>affirmed</u>**.

---

[5] In <u>Pasiewicz</u>, the court stated that the result might have been different if the arresting officers had known that they lacked jurisdiction and made an arrest in violation of a specific prohibition by the police department in whose jurisdiction they acted. 270 F.3d at 527.